THE MORRIS ARNOFF REALTY CO. *v.* BRYANT.

(Decided February 6, 1928.)

*Mr. Max P. Goodman* and *Mr. Arthur A. Miller,* for plaintiff in error.

*Messrs. Pfeiffer & Fults,* for defendant in error.

SULLIVAN, P. J. In this case the parties stand in the same relative position as they did in the common pleas court, and it is here sought to reverse the judgment below, which was based upon the recovery of rents alleged to be due the plaintiff from the defendant, and reversal is sought by the assignment of error that the court should have considered the

contract as the contract of a hold-over in tenancy for the whole year, or at least for the time for which the building remained unoccupied, instead of as a month to month tenancy, and it is therefore contended that the judgment should have been for the sum of $225 for the seven months' nonoccupancy of the premises, instead of for the smaller sum rendered for two months' rent.

It appears that Bryant was a tenant of the plaintiff corporation under a lease for one year commencing November 1, 1921, and expiring October 31, 1922, and that before the lease expired the defendant sought its renewal for another period of one year at a reduction in rent from $225 to $200 per month. It appears from the record that this proposition was refused, but negotiations continued up until the expiration of the lease, and there is testimony that at that time the defendant had purchased a home on Cedar road, which was not then and there fully completed, and desired to stay over the term of his tenancy until he was prepared to enter and occupy his new home. It appears that there was no agreement or meeting of the minds between the principals as to the change of the price per month from the written lease for one year, but it appears that, notwithstanding that fact, the tenant held over for some two months, and then and thereupon vacated the premises and went to his new home, and it is shown by the evidence that, notwithstanding efforts to supply the old tenancy, the premises remained unoccupied until the 1st of September, 1922.

After an examination of the record, it is obvious that the determination of the question whether the arrangement was from month to month or for the

full year will not settle the vital issue of error in this case, because the real question is whether the janitor, as agent for the plaintiff, under authority of his principal, made a binding agreement that for the succeeding period the rent of $225 per month was to prevail on the basis of a month to month tenancy according to the old terms, which sum was in fact paid by the tenant for the time that he occupied the premises after the expiration of the original lease.

This agency switches the question from the proposition contended for, that the tenant was liable for the full term, because its determination depends upon whether there was a new agreement, made by a duly constituted agent, that the hold-over would be month by month until the new premises were ready to be occupied. Were this question not in the case, we would have no trouble in determining the original question, but, inasmuch as the entire proceedings in error depend upon the question of agency, it becomes unnecessary to examine any other question for the present and is only necessary to ascertain from the record whether there was a new agreement made by the agent, and, if there was, then that new contract disposes of the legal question as to whether the tenant is bound by holding over, or whether he was only bound for rent from month to month, under a contract.

We find from excerpts of the bill of exceptions a conversation wherein Mr. Arnoff of the corporation was not present, and the purpose of the conversation is apparently an attempt to show that the agent, otherwise known as the janitor of the building, had authority from the corporation to make the new agreement herein specified, and it is clear that, in-

stead of putting Mr. Arnoff upon the witness stand, thus forming the basis of impeachment, they undertake, with the witness named Sommers, to supply hearsay evidence as to a statement that it is alleged that Mr. Arnoff made to the janitor, which would form the basis of authority for making a new agreement. That testimony is as follows:

Q. Now, was Mr. Sommers speaking for himself on that question about which he was talking to you? A. Yes. I was only asking Mr. Sommers to find out if I could stay from month to month. It was two or three days before I received an answer, and he said it was all right, that he had gotten permission.

Q. From whom? A. Mr. Arnoff * * *.

Q. Mr. Sommers, Mr. Bryant was out to your house on Lakeview Road here a few days ago, to see you, wasn't he? A. Yes, sir.

Q. He was talking with you there, in the presence of your wife, wasn't he? A. Yes.

Q. When he was asking you some questions, didn't your wife speak up and say, "Why, Pete, don't you remember when Mr. Arnoff was in our kitchen and you asked him whether it would be all right for Mr. Bryant to stay a month or two because his place was not completed, and that Mr. Arnoff said it was all right?"

Mr. Miller: I object.

The Court: He may answer.

Mr. Miller: Exception.

A. She said something like that.

Mr. Fults: That is all.

It is clear from this examination that the evidence is incompetent, and it is clearly prejudicial, because its tendency and effect are to establish agency, and

agency cannot be proved in this manner. This is an attempt to bind the plaintiff to a new contract on the ground that the evidence tends to show that the janitor was authorized to make a new deal with the tenant, and did so.

Mr. Arnoff could have been placed upon the witness stand, and, as before stated, ground could have been laid for impeachment; but this was not done, and reliance upon this evidence, even if it were competent to establish agency, has no foundation in law for the reason that Arnoff was not bound by anything that was testified to in the examination of Sommers.

It further appears that he denied the entire conversation, and that he was corroborated therein; and yet a denial was hardly necessary, first, because the evidence was incompetent, and properly objected and excepted to, and, second, because the answer, to wit, "She said something like that," is of such unsubstantial nature that it could not be sufficient upon which to found a contract in law, where it is necessary that both minds should meet upon the new terms.

Therefore, it becomes unnecessary to examine the authorities and give our views as to whether there was a holding over under the authority of *Bumiller* v. *Walker,* 95 Ohio St., 344, 116 N. E., 797, L. R. A., 1918B, 96, and many other authorities of a similar nature.

It must not be forgotten that the record is clear that the landlord and tenant could not agree as to the terms of the hold-over agreement, and thus it became necessary to rely upon the evidence above quoted as to agency, and, as before stated, this evi-

dence is not only incompetent, but is of too weak character to create a contract between principal and agent, such as would bind the principal in law.

Holding these views, the judgment of the lower court, which apparently was based upon the hearsay testimony above referred to, is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

Vickery and Levine, JJ., concur.